829 F.2d 34
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Clayton E. BOLLING, Plaintiff-Appellant,
v.
VIRGINIA Commonwealth University, Defendant-Appellee.
 No. 86-1649
 United States Court of Appeals, Fourth Circuit.
 Argued April 10, 1987.
Decided September 8, 1987.
 
 Robert Patrick Geary (Geary & Davenport, on brief), for appellant.
 Patrick B. Kelly, Special Assistant Attorney General, Legal Advisor's Office, Virginia Commonwealth University (David L. Ross, Special Assistant Attorney General, Mary Sue Terry, Attorney General of Virginia, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Clayton E. Bolling appeals a judgment rejecting his claim of racially discriminatory discharge, in violation of 42 U.S.C. Secs. 2000(e) et seq., by his employer, appellee Virginia Commonwealth University (VCU). Bolling challenges the district court's determination in a bench trial that his discharge from a maintenance position with VCU was not based upon his race. We affirm.
 
 
 2
 * Bolling, a black male, was hired by VCU as a master electrician in 1972 and promoted to electrician lead man in 1979. In 1983, he became Supervisor of Preventive Maintenance, with responsibility for inspecting and documenting maintenance to major mechanical systems on VCU's campuses. In answer to the question on the job application completed in 1972, 'Have you ever been convicted of a law violation or had a surety bond cancelled or application for a bond refused?' Bolling wrote, 'No.' In 1979, when Bolling applied for promotion, he responded 'No' to the question 'Have you ever been convicted of a law violation, including moving traffic violations, but excluding offenses committed before your 18th birthday which were finally adjudicated in a juvenile court under the youth offender law?' In fact, Bolling had been convicted in 1964 of interfering with police, for which he had received a $25 fine; in 1967 he had been convicted of disorderly conduct, for which he had received a $10 fine; he had been convicted in 1975 of a worthless check violation, for which he had received a $10 fine, and he had been convicted of assault in 1978, for which he had received a $50 fine and a 60-day suspended sentence. In September 1984, Bolling was arrested for receiving stolen goods and, pursuant to VCU procedures, was suspended from his work pending completion of the investigation against him. During that time, Bolling's supervisor, Thomas Shackelford, was advised of the prior convictions. When Shackelford asked Bolling whether he had falsified the job applications, Bolling said no. Shackelford consulted two superiors and together with them determined that Bolling should be terminated because he now had lied three times about his criminal record. A white man was hired to replace Bolling.
 
 
 3
 The discharge notice to Bolling, which Shackelford wrote, cited the falsification of forms as a Group III offense. As a state agency, VCU is subject to the 'Standards of Conduct' for discipline of all state employees, va. Code Sec. 2.1-114.5(J) (1950). This code requires grouping of employee offenses according to severity. The Group III offenses are the most severe, ordinarily resulting in immediate discharge. Corrective action specified for each group cannot be exceeded but may be reduced if there are mitigating circumstances. The severity of discipline imposed on a Group III offense is discretionary with the disciplining superior, who may consider the offending employee's work record to mitigate the wrongdoing.
 
 
 4
 There was conflicting testimony regarding whether Bolling's good job record was considered. Whatever was considered, Shackelford testified that he believed--and he so stated in the discharge notice--that he had no choice but to dismiss Bolling. The testimony was that Shackelford and those with whom he consulted believed the nature of Bolling's violation so serious as to necessitate dismissal notwithstanding his excellent job record. According to Shackelford, dismissal was deemed necessary because Bolling's failure to make note of his criminal offenses suggested impairment of his ability to maintain accurate records, one of his job responsibilities. Shackelford testified that race was not a factor in the discharge, as did his superiors who helped make the disciplinary decision.
 
 
 5
 Bolling's evidence demonstrated that four other employees, all of whom were white, had committed Group III offenses but had been treated more leniently than he. One, a plumber steam fitter named Chester McGregor, was cited for sleeping on the job and failing to respond to an emergency call regarding a dripping hospital faucet. He received only a three-day suspension, because he had been working a double shift at the time he fell asleep. Subsequently, McGregor committed what appears to be a Group I offense for threatening and cursing a fellow employee. He was suspended for ten days. McGregor also had been convicted of a felony and given an eighteen-year prison sentence but was rehired after being paroled.
 
 
 6
 Another white employee, Gary Webb, was asked to leave VCU for abusing and cursing subordinates but later was rehired. Shackelford and the superior who agreed on Bolling's termination were not Webb's supervisors during this time.
 
 
 7
 Shackelford permitted another white male employee, David Toney, to return to his job as an air conditioning mechanic after serving a jail sentence for a misdemeanor offense. Shackelford testified that he had dealt with a black employee who had committed a similar offense in a similar manner.
 
 
 8
 Finally, Steven Willis, a white pipefitter, was fired in 1983 for committing the Group III offense of assaulting a fellow employee. He later was rehired by the University, although in a different department and to a position with less responsibility.
 
 
 9
 VCU's evidence in rebuttal included testimony that a white male sheet metal worker, Thomas Sounton, had been terminated after about six weeks of employment for having falsely responded 'no' to the same question Bolling had falsely answered. Sounton had failed to reveal that he had been convicted of grand larceny.
 
 
 10
 The district court found that Bolling's race was not the reason he was fired from his position at VCU. Rather, Bolling's discharge resulted from a Group III infraction that undermined the employer's confidence in Bolling's ability to do his job adequately. The court further noted that even if Bolling had satisfied the prima facie case for showing discriminatory discharge, he had failed adequately to discredit the employer's proffered explanation for its disciplinary decision. The court thus found in favor of VCU.
 
 
 11
 This appeal followed.
 
 II
 
 12
 That Bolling falsified the job application is not in dispute. Rather, Bolling disputes VCU's assertion that his discharge was due to the falsification. Bolling argues that he was dismissed because he is black.
 
 
 13
 A plaintiff's burden in a racial discrimination case under 42 U.S.C. Secs. 2000(e) et seq. is to demonstrate that but for his race, the challenged personnel action would not have been taken against him. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff establishes a prima facie case of discrimination by showing (1) that he engaged in prohibited conduct similar to that of a person of another race and (2) that disciplinary action taken against him for this conduct was more severe than that taken against the person of the other race. Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985). An employer rebuts this prima facie case by articulating a legitimate, nondiscriminatory reason for the disciplinary action, which the employee must show is pretextual if he is to prevail. McDonnell Douglas, 411 U.S. 792; Moore, 754 F.2d 1100.
 
 
 14
 The district court's conclusion that race did not motivate VCU's action is a finding of fact which may not be set aside on appeal unless clearly erroneous. Fed. R. Civ. P. 52(a); see Goodman v. Schlesinger, 584 F.2d 1325 (4th Cir. 1978). Only if the district court's fact finding process was seriously flawed as by being based upon a misapprehension of controlling legal principles, or failing to take into account substantial contrary evidence may an appellate court reverse. E.g., Moore, 754 F.2d 1100; Miller v. Mercy Hospital, Inc., 720 F.2d 356, 361 (4th Cir. 1983).
 
 
 15
 The district court supported its dispositive finding of no discrimination here by noting that Shackelford had considered mitigating factors before recommending Bolling's discharge and that a white worker had been treated comparably when he had falsified his application. The court considered that the more lenient treatment accorded the white employees who had committed different Group III offenses was not comparable. The court discounted the fact that other employees also had committed criminal offenses, for Bolling's discharge was not based upon the severity of the criminal offenses he committed but rather upon the fact that he had lied about them.
 
 
 16
 Bolling complains primarily of the district court's conclusion that less severe disciplinary actions taken against white employees for different Group III offenses did not set up a comparable situation. In particular, he contends that the disparate treatment of McGregor and himself demonstrates that his discharge was racially motivated. However, Bolling's argument rests in part on his version of what type of offenses McGregor committed. Although it is clear that McGregor's first offense falls within Group III, the portions of the record cited by the parties do not demonstrate clearly that McGregor's second offense was of the Group III rather than the Group I variety. Moreover, the discipline imposed upon white employees who had committed different Group III offenses than Bolling does not necessarily set up a comparable situation. Bolling attempts to compare, superficially, offenses within the same general category of severity without taking into account that the various Group III offenses are, in their nature, different. More probative of the motivation behind Bolling's discharge is the dismissal of Sounton, a white employee charged with falsification of an employment application. Sounton received precisely the same discipline as did Bolling.
 
 
 17
 Even assuming that Bolling met the burden of proving a prima facie case of discrimination by highlighting different treatment of white employees who had committed Group III offenses, he failed to demonstrate that the employer's proffered legitimate nondiscriminatory reason was pretextual. The employer's evidence consisted not only of proof that the white employee who had committed the precise Group III offense committed by Bolling also was discharged but also of specific testimony by Bolling's superiors that they were concerned about Bolling's falsification of two applications and his later verbal denial that he had a criminal record. They decided to discharge him because of the record--keeping duties associated with Bolling's job, which could have been adversely affected by his 'forgetfulness' in not documenting properly his own criminal record. They testified that accurate documentation of maintenance is an important component of continuing accreditation of VCU's hospitals and laboratories. The employer's evidence was not sufficiently undermined by Bolling's continued reliance upon the disparity of treatment of employees who committed different varieties of Group III offenses to merit a reversal of the district court's finding that there was no discrimination in this case. That dispositive finding was not clearly erroneous under the standards of review we apply.
 
 
 18
 AFFIRMED.